UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RED BADGE INVEST LTD.,

    Plaintiff,

-against-

AMERICAN WELL CORPORATION,

    Defendant.

Case No.: _____

**JURY TRIAL DEMANDED**

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff RED BADGE INVEST LTD. ("Red Badge") files this Complaint, by and through its undersigned counsel, for breach of contract against Defendant American Well Corporation ("Amwell" or the "Company") by alleging as follows:

**NATURE OF THE CASE**

1. This case is a straightforward breach of contract action arising from Amwell's breach of its obligation to provide Plaintiff written notice of and an opportunity to participate in a registered public offering. As a result, Plaintiff was denied its right to participate in that offering and benefit from the sale of its shares of Amwell's common stock.

2. Red Badge holds over 700,000 shares in Amwell common stock. In connection with that, Red Badge and Defendant are parties to a Second Amended and Restated Investors' Rights Agreement, dated as of October 8, 2010, as subsequently amended (the "IRA").

3. At all relevant times, the IRA required Amwell to provide holders of its common stock, including Red Badge, prompt written notice of a registered offering and the right to participate.

1

4. In or around January 16, 2021, Defendant undertook a registered offering whereby the Company's shareholders had the opportunity to sell shares of their stock at $27.50 per share, at a time when those shares were otherwise subject to a lock-up agreement following the Company's initial public offering that generally barred them from selling their shares.

5. Amwell did not provide prompt written notice to Plaintiff of the registered offering. As a result, Defendant breached its obligation under the IRA to provide such notice and thus deprived Plaintiff of the right to sell its shares in that offering. Had Defendant provided the required notice to Plaintiff of the offering, Red Badge would have sold over 700,000 shares at $27.50 per share, resulting in proceeds in excess of $19 million.

6. Plaintiff therefore brings this action to recover damages resulting from Amwell's breach of the IRA.

## THE PARTIES

7. Plaintiff Red Badge Invest Ltd. ("Red Badge") is a limited company organized under the laws of the British Virgin Islands with its company headquarters and principal place of business in Hong Kong, China.

8. Defendant American Well Corporation ("Amwell" or the "Company") is a corporation organized under the laws of Delaware with its corporate headquarters and principal place of business in Boston, Massachusetts.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because (i) there is complete diversity of citizenship between the parties, and (ii) more than $75,000, exclusive of interest and costs, is at stake.

10. This Court has personal jurisdiction over Defendant because Defendant's corporate headquarters and principal place of business are in Boston, Massachusetts.

11. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activity within Massachusetts, including transacting substantial business in this State, contracting to supply services in this State, and deriving substantial revenue from services rendered in this State.

12. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant is a citizen of this judicial district pursuant to 28 U.S.C. § 1391(c)(2) and Defendant is subject to this Court's personal jurisdiction with respect to this action.

## FACTUAL ALLEGATIONS

### I. Red Badge's Investments in Amwell

13. Amwell is a Boston-based corporation that provides telemedicine and software products. Founded in 2006, Amwell operates in all fifty states and claims that it collectively represents more than eighty million patients. To date, Amwell has raised more than five hundred million dollars from investors through a mixture of equity-based financing and public offerings.

14. At all relevant times, Red Badge has acted through its representatives, including Alireza Ittihadieh ("Ittihadieh"). Red Badge is held by a trust of which Ittihadieh is the primary beneficiary.

15. Starting from in or around December 2006, Red Badge acquired stock in Amwell intermittently. In particular, Red Badge acquired 50,000 shares of Series A Convertible Preferred Stock in Amwell and 33,333 shares of Series B Convertible Preferred Stock (the "Pre-IPO Shares").

16. In or around November 2012, Red Badge engaged with Banque SYZ Ltd. (formerly known as Banque Syz and Co SA) ("Banque Syz") to act as a nominee holder for Red Badge in

3

connection with the Pre-IPO Shares. Banque Syz and Red Badge communicated this to Amwell, and Amwell understood that Banque Syz would be acting solely as a nominee holder and that Red Badge would remain the beneficial owner of the Pre-IPO Shares and the real party in interest with respect to those shares.

17. Accordingly, on or around November 15, 2012, Banque Syz, solely in its capacity as a nominee holder and on behalf of Red Badge, executed an Instrument of Succession whereby it became a party to the IRA.

18. Before and after that event, Amwell repeatedly acknowledged that Red Badge is a holder of the Company's securities and a beneficiary of and real party in interest to the terms of the IRA. Indeed, for years, Amwell communicated with Red Badge in regard to its Amwell stock by contacting its representative Ittihadieh at two email addresses: **office@redbadgeinvest.com** and alireza@freestreambermuda.bm.

19. On March 14, 2013, for example, Roy Schoenberg (the Company's co-CEO), emailed Ittihadieh, attaching a letter that recognized Red Badge's stockholder status and Ittihadieh's interest therein. The letter stated: "Dear Stockholder, It is my pleasure to invite you to the annual meeting of stockholders of American Well Corporation… Our charter requires both a majority of all outstanding shares of common stock and a majority of all outstanding shares of preferred stock, determined on an as converted common stock basis, to be present at the annual meeting in person or by proxy in order to constitute quorum for the election of directors. **Therefore, your representation at the meeting is very important.** Regardless of whether you plan to attend the meeting, **I urge you to vote your shares as soon as possible.**" Also included was a "Notice of Annual Stockholders Meeting of American Well Corporation, stating among other things that "**All holders of record of common stock and preferred stock of the Company as of the close of**

4

**business on March 15, 2013 are entitled to notice of and to vote at the annual meeting or any adjournment or postponement thereof**." (Emphasis added.)

20.  On November 20, 2013, Ido Schoenberg (the Company's co-CEO) wrote to Ittihadieh, and offered for Red Badge, through Ittihadieh, to participate in a sale of the Company's Series C preferred stock, stating: "Today, following our Board's approval, we are pleased to offer you the opportunity to purchase shares of Series C preferred stock at the same price and under the same terms as when it was originally sold in 2010… **American Well has determined to offer its existing stockholders 555,555 shares of the remaining Series C preferred stock available for issuance at the $45 per share offering price.**" (Emphasis added.)

21.  On November 7, 2014, Bradford Gay (the Company's General Counsel) wrote to Ittihadieh, with the members of the Company's Board of Directors copied, including the Company's co-CEOs Ido and Roy Schoenberg.  Mr. Gay wrote to Ittihadieh:  "**Partners of American Well**: … As Ido discussed on the update call, American Well's Board of Directors has approved a revised governance structure which the Board believes better positions the Company for growth and accessing the capital markets…. **In order to implement this new structure, the Board has directed management to send you the attached proposed amendments to the Company's Restated Certificate of Incorporation ('Charter Amendment') along with a form of written consent approving the Charter Amendment…** The Charter Amendment requires the approval of a majority of the Company's stockholders (that is, a majority of both (i) the common and preferred shares voting together as a single class and (ii) the preferred shares voting separately)… **If you approve of the Charter Amendment, please** (i) print out the attached consent, (ii) **sign it on behalf of yourself or the entity which you represent**, and (iii) send a pdf of your signature page(s) to my attention."  (Emphasis added.)

5

22. In or around September 2017, Ittihadieh and Red Badge sought documents and information from Amwell in connection with Red Badge's Amwell stock holdings. Plaintiff's counsel explained that they "represent[ed] [Individual 1], Alireza Ittihadieh, and [Individual 2] and their respective trusts and affiliates through which they hold direct and indirect interests in American Well Corporation." In recognition of Red Badge's stockholder status and further to that request for documents, Amwell entered into a Confidentiality Agreement with Ittihadieh dated as of September 20, 2017, which (i) defines Ittihadieh as "Shareholder"; (ii) states that "[i]n connection with the Shareholder's holdings of equity interests in American Well Corporation, American Well Corporation intends to disclose certain confidential information to Shareholder"; and (iii) was executed by Mr. Gay as Amwell's General Counsel. (Amwell subsequently produced confidential Company documents to Plaintiff pursuant to that Confidentiality Agreement.)

23. On July 7, 2018, Ido Schoenberg emailed Mr. Gay, stating: "Brad, [p]lease send our partners [Person X] and Alireza [Ittihadieh] the details of our 2018 financing per their request."

24. On July 24, 2020, Ido Schoenberg wrote to Mr. Gay, stating: "Brad, Please make sure Alireza gets the partners materials. For some reason he did not. We just spoke." Mr. Gay responded stating: "Alireza – We will send the docusign to you shortly." Catherine Riley, a Corporate Paralegal for Amwell wrote: "Hello Alireza, I just resent you the Docusign containing the materials we distributed yesterday. My apologies you didn't receive them then, we had an old email address on file for you. Please let me know if you need anything else or have any issues viewing the materials."

25. On July 27, 2020, Ms. Riley sent an email to Ittihadieh on behalf of Mr. Gay seeking Ittihadieh's approval of "Shareholder Resolutions" and stating: "Partners of American Well, [p]lease see the enclosed cover note from Dr. Ido Schoenberg, Chairman of the Board and co-CEO

at Amwell, and the associated request for your approval." Ittihadieh responded: "Dear Catherine[,] Please re-send the Docusign Document and include Alain.Nahmany@syzgroup.com and ops.fsp@syzgroup.com."

26. For years, including in 2013 and 2015, Amwell sent to Red Badge, through Ittihadieh, "Confidential" documents including "Investor Updates" and "Partners Newsletters."

## II. The IRA Requires Amwell to Provide Stockholders Prompt Written Notice of and the Right to Participate in Registered Offerings

27. Section 1.1(f) of the IRA refers to certain Amwell investors as "Holders" and defines the term under § 1.1(f) as "(i) [A]ny Investor that holds Registrable Securities, [or] (ii) any holder of Registrable Securities to whom the registration rights conferred by this Agreement have been duly and validly transferred . . . ."

28. Under Section 2.2(a) of the IRA, the Company is required to provide prompt written notice of a proposed registration of securities to shareholders and the right to participate in the offering. In particular, that Section states:

> If at any time following the Initial Public Offering, the Company shall determine to register any of its securities either for its own account or the account of a security holder or holders . . . the Company will: (i) promptly give written notice of the proposed registration to all Holders; and (ii) include in such registration (and any related qualification under blue sky laws or other compliance), except as set forth in Section 2.2(b) below, and in any underwriting involved therein, all of such Registrable Securities as are specified in a written request or requests made by any Holder or Holders received by the Company within twenty (20) days after such written notice from the Company is mailed or delivered….[1]

29. Section 8.2(b) of the IRA states that:

> All notices and other communications required or permitted hereunder shall be in writing and shall be mailed by registered or

---

[1] The IRA defines the term "Initial Public Offering" as "the closing of the Company's first firm commitment underwritten public offering of the Company's Common Stock registered under the Securities Act."

> certified mail, postage prepaid, sent by facsimile or electronic mail or otherwise delivered by hand or by messenger addressed: . . . (b) if to any Holder, at such address, facsimile number or electronic mail address as shown in the Company's records, or, until any such holder so furnishes an address, facsimile number or electronic mail address to the Company, then to and at the address of the last holder of such shares for which the Company has contact information in its records . . .

### III. Amwell's September 2020 IPO and the January 2021 Public Offering

30. On August 24, 2020, Amwell filed Form S-1 with the SEC to commence the regulatory approval process for its initial public offering (the "IPO"). The planned IPO was an underwritten public offering of the Company's Class A common stock, which it registered with the SEC.

31. On September 16, 2022, the Company went public with a $742 million IPO, in which it sold approximately 41 million shares of its Class A common stock at $18.00 per share. In connection with the IPO, Red Badge's shares of Company stock were ultimately converted into 711,109 shares of Class A common stock in Amwell.

32. The Company's common stockholders—including Red Badge—had agreed to certain restrictions that, subject to certain exceptions, prohibited them from selling those shares (or the economic consequences of the ownership of those shares) for a period of 180 days starting from September 16, 2020, without the prior written consent of Morgan Stanley & Co. LLC, Goldman Sachs & Co. LLC, and Piper Sandler & Co. (the "Lock-Up Period").

33. On September 17, 2020, Amwell contacted Ittihadieh and asked him to provide contact information in respect of Red Badge's interest in Amwell. In response, on September 18, 2020 and at Ittihadieh's request, Banque Syz SA—Red Badge's nominee in respect of its Class A common stock—provided Amwell the following email address for stockholder communications: ops.fsp@syzgroup.com.

34. At the time, according to Amwell, Broadridge Financial Solutions, Inc. ("Broadridge") was the "transfer agent and registrar for the [Company's] Class A common stock."[2] Broadridge thus maintained the Company's records in respect of its Class A common stock shareholders, including Plaintiff.  Amwell entered the email address that Plaintiff provided in respect of Red Badge's Class A common stock (ops.fsp@syzgroup.com) into the Company's stockholder records maintained by Broadridge.

35. The Company was well aware of and used this email address to contact Red Badge both before and after this email exchange.  As examples, the Company sent emails to ops.fsp@syzgroup.com: (i) on July 27, 2020, attaching "Shareholder Resolutions (July 2020)"; (ii) on August 13, 2020, attaching "Shareholder Resolutions High Vote August 12, 2020"; and (iii) on September 25, 2020, attaching "Final IPO Documents for signature."

36. In addition, on October 17, 2020, the Company emailed IRS forms to ops.fsy@syzgroup.com in respect of Red Badge's Shares.  Banque Syz, on behalf of Red Badge, responded to the Company from that address and submitted IRS Form W-8IMY to the Company. In that form, consistent with prior communications with the Company, Banque Syz identified itself as a "Qualified Intermediary."  Such an "intermediary," according to the IRS (and as the Company was well aware), "is a custodian, broker, nominee, or any other person that acts as an agent for another person."  That, of course, was the case here, where Banque Syz acted solely as a nominee and on behalf of Red Badge.

37. On or around November 12, 2020, the Pre-IPO shares were converted into 711,109 shares of Class A common stock in American Well Corporation (the "Shares") and deposited on a securities account held by Red Badge with Banque Syz.

---

[2] American Well Corporation (Aug. 24, 2020), Form S-1, Securities and Exchange Commission (accessed on November 8, 2023, S-1 (sec.gov)).

38. On December 18, 2020, the Company issued a letter to certain, but not all, holders of the Company's Class A common stock (the "Registration Notice"). The Registration Notice informed the holders that received it that the Company intended to file with the SEC a Registration Statement on Form S-1 in connection with a proposed underwritten public offering of its shares of its Class A Common Stock (the "Registered Offering").

39. The Registration Notice instructed the holders that received it as to how they could include their Class A common stock in the public offering, as was their (and other holders') contractual right. It explained:

> Pursuant to Section 2.2 of the Investors' Rights Agreement, you have the right to include for registration certain Registrable Securities held by you in the Registration Statement and the Offering…. <u>Please read the attached Instructions and enclosed documents carefully.</u> This letter contains important information and instructions regarding your ability to participate as a selling stockholder in the Offering, as well as instructions with respect to the enclosed documents required for any participation in the Offering…. SHOULD YOU WISH TO PARTICIPATE AS A SELLING STOCKHOLDER, YOU MUST EXECUTE THE REQUIRED DOCUMENTS AND RETURN A COMPLETE SET OF THE ORIGINAL EXECUTED DOCUMENTS NO LATER THAN THE CLOSE OF BUSINESS ON JANUARY 7, 2021. IF YOU DO NOT, YOU WILL NOT BE ABLE TO PARTICIPATE.

(Emphasis and capitalization in original.)

40. The Registered Offering thus provided stockholders an opportunity to monetize their Class A common stock at a time when they were otherwise barred from doing so in view of the Lock-Up Period.

41. In violation of Section 2.2 of the IRA, the Company did not email the Registration Notice to the email address that Red Badge had provided in respect of its Class A common stock and the Company did not otherwise mail, fax, or otherwise deliver by hand or messenger the Registration Notice to Plaintiff.

42. On January 12, 2021, Amwell filed a Form S-1 with the SEC in connection with the Registered Offering. The Company subsequently sold 11,280,647 shares of Class A common stock owned by various stockholders as part of the Registered Offering and at $27.50 per share.

43. As a result of the Company's breach of Section 2.2 of the IRA, Plaintiff was unaware of the Registered Offering, did not provide the Company the required documents by January 7, 2021 (as requested in the Registration Notice), and therefore—as the Registration Notice stated—Plaintiff was deprived of its right to participate.

44. Had Plaintiff participated in the Registered Offering, Red Badge's 711,109 shares of Class A common stock would have sold at $27.50 per share for a return of $19,555,497.50. The value of those same shares has since dropped precipitously. On December 13, 2023, for example, they were worth approximately $1.25 per share, for a total value of $888,886.25.

45. Despite Plaintiff's repeated requests, Amwell has failed to provide documentary proof that it sent the Registration Notice to Plaintiff at the email address it provided (ops.fsp@syzgroup.com), as required by Section 2.2 of the IRA. To the contrary, Amwell shockingly took the confounding position that Red Badge and Ittihadieh had no stockholder interest in Amwell—despite years of Amwell's co-CEOs and General Counsel having recognized those interests in writing—and claimed that Banque Syz instead was the actual owner of Red Badge's stock.

46. Notwithstanding Amwell's misguided posturing, and solely out of an abundance of caution and a good faith effort to avoid unnecessary disputes, on December 12, 2023, Red Badge and Banque Syz provided prior written notice to Amwell (the "Notice Letter," attached as Exhibit A) that (i) Banque Syz would be transferring the Shares to a U.S. account in Red Badge's name and transferring any and all title or interest that Banque Syz allegedly had in them to Red Badge

under SEC Rule 144, pursuant to Section 2.8 of the IRA; (ii) Red Badge would be executing a joinder to the IRA pursuant to Section 2.8 of the IRA; and (iii) Banque Syz would be assigning to Red Badge any breach of contract claim concerning the IRA that Banque Syz allegedly possessed. Amwell has not responded to the Notice Letter and Red Badge and Banque Syz have since executed these transactions.  (*See* Exhibits B-D, attached.)

**FIRST CAUSE OF ACTION**
**(Breach of Contract)**

47. Plaintiff repeats and realleges the allegations above, as if fully restated herein.

48. Red Badge and Defendant are parties to a valid and enforceable contract, the IRA.

49. Alternatively, Banque Syz and Defendant were parties to the IRA and Red Badge was a third-party beneficiary of the IRA.  Section 2.2(a) of the IRA directly benefitted Amwell stockholders—including Red Badge—because it protected stockholders' rights to sell their shares in registered offerings by Amwell, including Red Badge's rights in that regard.  That conferred particularly material and valuable direct benefits on pre-IPO stockholders, including Red Badge, when Amwell eventually undertook an IPO, after which their shares were subject to a lock-up period.  And Section 2.2(a) was material to the IRA's purpose where the IRA primarily concerns the stockholders' registration rights, the circumstances under which stockholders may transfer or sell their Amwell shares, and Section 2.2(a) mandates that the Company provide stockholders like Red Badge the right to include their shares in a registered offering by the Company.  The IRA does not contain any provision disclaiming third party beneficiary rights.

50. Alternatively, Red Badge is an assignee of any breach of contract claim concerning the IRA possessed by Banque Syz.

51. Plaintiff and Banque Syz performed all of their material obligations set forth in the IRA.

52. Under the IRA, Defendant was required to (i) provide Plaintiff prompt written notice of the Registered Offering, including at the address that Plaintiff provided; and (ii) honor Plaintiff's right to sell its shares in any such offering.

53. Defendant (i) failed to provide proper notice of the Registered Offering to Plaintiff before undertaking the Registered Offering, in breach of Section 2.2(a)(i) of the IRA; and (ii) deprived Plaintiff of its right to participate in that offering.

54. Defendant's breach of the IRA has caused damages to Plaintiff in an amount to be determined at trial and in all circumstances in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award actual, direct, compensatory, and consequential damages for Plaintiff's pecuniary losses that resulted from Defendant's breach of the IRA;

B. Award Plaintiff all costs and fees incurred in prosecuting this Complaint and enforcing the terms of the IRA;

C. Award pre-judgment and post-judgment interest; and

D. Grant such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as to all claims so triable.

Dated: December 15, 2023                     Respectfully submitted,

                                             BOIES SCHILLER FLEXNER LLP

                                             By: */s/ Benjamin Solomon-Schwartz*

                                             Benjamin Solomon-Schwartz (BBO 688674)
                                             1401 New York Avenue, N.W.
                                             Washington, DC 20005
                                             Telephone: (202) 237-2727
                                             bsolomon-schwartz@bsfllp.com

                                             Marc Ayala (*pro hac vice* forthcoming)
                                             55 Hudson Yards
                                             New York, NY 10001
                                             Telephone: (212) 446-2300
                                             mayala@bsfllp.com

                                             *Counsel for Plaintiff*